IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAIIAN ART NETWORK, LLC and VINCENT K. TYLOR,<br><br>Plaintiffs,<br><br>vs.<br><br>ALOHA PLASTIC SURGERY, LLC; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE ASSOCIATIONS 1-10,<br><br>Defendants. | CIVIL NO. 11-00722 JMS/KSC<br>(Copyright Infringement)<br><br><br><br><br><br>MEMORANDUM IN SUPPORT OF MOTION |

**MEMORANDUM IN SUPPORT OF MOTION**

I.  **STATEMENT OF THE CASE**

   A.  **Jurisdiction and Venue**

This is an action for preliminary and permanent injunctive relief and damages arising from Defendant Aloha Plastic Surgery's (hereinafter "Defendant") copyright infringement(s) in violation of the United States Copyright Act, 17 U.S.C. §§ 101 et seq. and for violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (a) and (b) ("DMCA").

1

This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this district under 28 U.S.C. § 1400(a) and 28 U.S.C. §§ 1391(b) and 1391(c).

**B.     Defendant's Default Entered**

Based upon the service date of December 3, 2011, Defendant's Answer to the Complaint was due on December 27, 2011. Defendant did not file an answer, and the time for Defendants to answer or otherwise defend against Plaintiff's Complaint was not extended. A default was entered by the Clerk of the Court on December 30, 2011.

On Friday, January 6, 2012, Dr. Michael Pasquale filed what he characterized as "Defendants request to court for: Set Aside Default Judgment request by Plaintiff" (Doc. No. 8) on behalf of Aloha Plastic Surgery LLC. On Monday January 9, 2012, Plaintiffs filed a motion to strike based upon Local Rule 83.1 (Doc. No. 9). The Court granted that motion by order dated January 10, 2010 (Doc. No. 10).

On February 9, 2012, Dr. Pasquale emailed counsel for Plaintiffs indicating why he wasn't bothering to defend this action:

> Basically Aloha Plastic Surgery has no real assets. So I am thinking you may want to take the LLC as payment. I may form another cooperation with my wifes money probably less expensive than to hire a lawyer in which case you may be welcome to what ever is left and sell it from the LLC (sic).

2

>As far as me, I have about 2000 in a checking account. Everything else is in my wife's trust and she owns it. She has nothing to do with this so up to you.

*See* Declaration of Counsel ("Decl. of Cnsl.") at ¶ 8. In the same email, Dr. Pasquale went on to request another settlement offer so he could "make a decision what to do about this." Plaintiffs made a settlement offer to resolve the matter on the same day (Decl. of Cnsl. at ¶ 8).

On February 14, 2012, Plaintiffs' counsel received a telephone call from attorney Robin Melchor, indicating that she would be representing Aloha Plastic Surgery in this matter and requesting additional time to evaluate the claim before Plaintiffs filed a motion for default judgement. On February 22, 2012, Plaintiffs' counsel called Robin Melchor, who said that she had not yet had a chance to evaluate the claim. Plaintiff's counsel requested that she respond by Friday, February 24, 2012. Plaintiffs' counsel has had no further communication from Robin Melchor, until she made an appearance at the Rule 16 conference on March 23, 2012 (Decl. of Cnsl. at ¶ 10).

### C.     Factual Background Regarding Claims

The photographic works that are the subject of this action, (Image nos.: O-01 Waikiki–Pink Boat ORIG., and A-11 Hawaiian Sunset) were created by photographer Vincent K. Tylor, who is represented by Hawaiian Art Network, LLC, which now owns the copyrights to the works by written assignment. The

copyrights for the photographic works at issue were registered with the United States Copyright Office as VA 1-759-562 and VA 1-696-555 in the name of Vincent K. Tylor.  Plaintiffs have exclusive rights and privileges in the photographic works under the United States Copyright Act.  True and correct copies of the Certificates of Registration were attached to the Complaint as Exhibit "A." (Complaint at ¶ 8).  Vincent K. Tylor incurred substantial time and expense in creating the photographic works. (Complaint at ¶¶ 10, 21)

In August 2011, Plaintiffs learned that Defendant used said photographic work O-01 Waikiki–Pink Boat ORIG., on its website, www.hair-transplant-hawaii.com, a total of twenty-seven times as follows:

"**O-01 Waikiki–Pink Boat ORIG**."  used 27 times at:
**Page URLs:**
http://www.hair-transplant-hawaii.com/
http://www.hair-transplant-hawaii.com/hair-transplant/index.php
http://www.hair-transplant-hawaii.com/hair-transplant/who-needs-hair-transplant.php
http://www.hair-transplant-hawaii.com/hair-transplant/transplanting-hair.php
http://www.hair-transplant-hawaii.com/hair-transplant/hair-transplant-surgery.php
http://www.hair-transplant-hawaii.com/hair-transplant/hair-transplant-costs.php
http://www.hair-transplant-hawaii.com/hair-transplant/female-hair-transplant.php
http://www.hair-transplant-hawaii.com/hair-transplant/art-of-restoring-hair.php
http://www.hair-transplant-hawaii.com/hair-transplant/history-of-hair-transplants.php
http://www.hair-transplant-hawaii.com/risks-recovery/index.php
http://www.hair-transplant-hawaii.com/risks-recovery/hair-transplant-risks.php
http://www.hair-transplant-hawaii.com/risks-recovery/hair-transplant-scar.php
http://www.hair-transplant-hawaii.com/risks-recovery/hair-transplant-recovery.php
http://www.hair-transplant-hawaii.com/risks-recovery/hair-transplant-side-effects.php
http://www.hair-transplant-hawaii.com/risks-recovery/post-operative-care.php
http://www.hair-transplant-hawaii.com/hair-loss/index.php
http://www.hair-transplant-hawaii.com/hair-loss/hair-loss-drugs.php
http://www.hair-transplant-hawaii.com/hair-loss/use-of-medication.php
http://www.hair-transplant-hawaii.com/hair-loss/hair-loss-treatments.php

http://www.hair-transplant-hawaii.com/hair-loss/hair-loss-surgeon.php
http://www.hair-transplant-hawaii.com/baldness/index.php
http://www.hair-transplant-hawaii.com/baldness/baldness-surgeon.php
http://www.hair-transplant-hawaii.com/baldness/baldness-therapy.php
http://www.hair-transplant-hawaii.com/about-doc/index.php
http://www.hair-transplant-hawaii.com/about-doc/hair-transplant-doctors.php
http://www.hair-transplant-hawaii.com/about-doc/your-hair-transplant-surgeon.php
http://www.hair-transplant-hawaii.com/contact-us/privacy_notice.php
**Image URL:**
http://www.hair-transplant-hawaii.com/images/contactdr.jpg (Complaint at ¶¶11, 22).

Subsequently, Plaintiffs learned about additional infringements of Plaintiffs' photographic works on Defendant's websites, www.plastic-surgery-hawaii.com, and www.hawaiibiyouseikei.com, as follows:

"**O-01 Waikiki–Pink Boat ORIG**."  used at:
**Page URL:**
http://www.plastic-surgery-hawaii.com/page/2/
**Image URL:**
http://www.plastic-surgery-hawaii.com/wp-content/uploads/2010/06/waikiki_oahu_hawaii-1024x768.jpg     (Full Screen Hi Res Click-On Image)

"**A-11 Hawaiian Sunset**."  used at:
**Page URL:**
http://www.hawaiibiyouseikei.com
**Image URLs:**
http://www.hawaiibiyouseikei.com/wp-content/uploads/2010/11/58-300x225.jpg
http://www.hawaiibiyouseikei.com/wp-content/uploads/2010/11/58.jpg
(Full Screen Hi Res Click-On Image)     (Complaint at ¶¶ 12, 22).

These Images were used without obtaining any license or consent from Plaintiffs. True and correct copies of the photographic works registered by Plaintiff Tylor and used without permission on Defendant's websites were attached to the Complaint as Exhibit "B".  True and correct copies of

5

screenshots of Defendant's infringing uses of the photographic works at its websites were attached to the Complaint as Exhibit "C" (Complaint at ¶ 12).

Defendant intentionally removed or altered copyright management information from the photographic works at issue for each of its uses of those photographic works without the authority of Plaintiffs or the law because the pages on Defendant's websites contain multiple copies of the photographic works in question, without the original copyright management information included. Additionally, Defendant placed false copyright management information on the image No. O-01 Pink Boat ROG. Image (Complaint at ¶¶15, 34-36).

Defendant knew that it was violating the copyrights of Plaintiffs (or someone) in said photographic works by placing and using, or authorizing the placement and use of, the photographic works on the websites without making any effort to seek licensing. Defendant does business in the State of Hawaii, advertising on at least sixteen (16) websites that promote its professional medical services. (Complaint at ¶¶ 18-19).

Under 17 U.S.C. § 1203 (c) (3) (B) Plaintiffs are entitled to and do hereby elect statutory damages on the DMCA claims, in an amount of not less than $2,500 or more than $25,000 per violation. Additionally, 17 U.S.C § 1203

(b)(4) and (b)(5) provides for the award of costs and reasonable attorneys fees to the prevailing party.

## II. ARGUMENT

The Complaint alleges a claim for copyright infringement, in violation of the Copyright Act, 17 U.S.C. §101et. seq, and a claim for removal or alteration of copyright management information, and providing false copyright management information, in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (a) and (b).

There are two elements to a claim for copyright infringement: a plaintiff must allege (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006); Pacific Stock, Inc. v. Pearson Edu., Inc. 2012 U.S. Dist. LEXIS 3337 (U.S.D.C. HI, Jan. 11, 2012) Copy. L. Rep. (CCH) P30,186. Plaintiffs have pled facts to establish the necessary elements of copyright infringement.

"With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); *see* DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9h Cir.

1987) *see also* Fed. R. Civ. P. 8(b)(6). The entry of default conclusively establishes the facts as to liability, but not damages. *See* <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977). While the court may conduct a hearing to determine damages, *see* Fed. R. Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiffs Fed. R. Civ. P. 55(b)(2); see <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989).

As a general rule, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." <u>VonGrabe v. Sprint PCS</u>, 312 F. Supp. 2d 1313, 1319 (S.D. Cal. 2004) (citing <u>Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985)).

In determining whether to grant default judgment, the court should consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Twentieth Century Fox Film Corp. v. Streeter</u>, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006) (quoting <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986)). *See also* <u>Parr v. Club Peggy, Inc.</u>, Civ. No. 11-00505 JMS-BMK, 2012 U.S. Dist. LEXIS 24785 (USDC HI 2012).

The Eitel factors favor Plaintiff:  (1) Defendants' failure to answer in this action over the course of almost four months prejudices Plaintiff's ability to obtain a prompt and efficient resolution;  (2) Plaintiffs have demonstrated that Defendant has violated Plaintiff's copyrights and has violated the DMCA. (3) Plaintiff's complaint sufficiently sets forth the elements to support the claims under the Copyright Act and the DMCA; and (4) the amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

Two of the seven factors are neutral because Defendants have not answered or asserted any defenses (meritorious or otherwise):  (1) the possibility of a dispute concerning material facts, and (2) whether the default was due to excusable neglect.  Any possible meritorious defenses or arguments as to excusable neglect are made more implausible by extended period of time that Defendants have failed to appear in the case.  Although the last factor, the strong policy favoring decisions on the merits, favors denial of the motion, on balance, the record strongly favors granting the default judgment.

### III. DAMAGES

#### A. **Damages for Copyright Infringement**

**(1)** **Statutory Damages**   Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence

9

offered as to his actual damages and the amount of the defendant's profits." Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and, for a willful infringement, no more than $150,000.00 per work for Defendants' violation of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2).

In Warner Bros. Entertainment v. Caridi, 346 F. Supp. 2d 1068 (C.D. Ca. 2004), the plaintiff sought enhanced statutory damages after an entry of default judgment against defendants who had engaged in unauthorized copying and distribution of two movie "screeners" the plaintiff had loaned them for award consideration. Id. at 1069-71. The federal district court noted that, "[b]ecause of the entry of default, the allegations in [the plaintiff's] Complaint must be taken as true. Thus, since [the plaintiff] alleged willful infringement, the Court must take [the plaintiff's] allegation of willful infringement as true." Id. at 1074. In that case, the plaintiff sought statutory damages under 17 U.S.C. § 504(c)(2) for a sum of not more than $150,000.00 per work. Id. The court found that the egregiousness of the conduct in that case was compounded by the defendants' failure to proffer any defense, and warranted an award of enhanced statutory damages of $150,000.00 per work. Id.

In the present case, Plaintiff's allegations of willful infringement should

be taken as true.  Additionally, as in Warner Bros., the Defendants' conduct was clearly egregious.  Here, Defendant's principal, Dr. Pasquale, is a plastic surgeon, but also holds himself out as the CEO of a web design company according to his websites. Attached as Ex. "B" are true and correct copies of screenshots of websites containing Dr. Pasquale's descriptions of his website designer activities (Carner Decl. at ¶ 6).  As such, he should be familiar with copyright laws and the DMCA, and the cavalier disregard for those laws in creating his own commercial websites is particularly egregious.  The deterrent purpose of statutory damages is important here to discourage future acts of a scofflaw.  Moreover, as in Warner Bros., the egregious conduct was compounded by Defendants' failure to bother to proffer any defense to Plaintiff's Complaint.

Although Plaintiff is entitled to seek $150,000.00 per work for Defendants' willful infringement of the images in this case, Plaintiff asks that the Court award it statutory damages under 17 U.S.C. § 504(c)(1) for the willful copyright infringement in the amount of **no less than $10,000** for the one image subject to statutory damages for the copyright infringement.

(2)   **Actual Damages**   One image at issue was not registered prior to the beginning of the infringing use, however, plaintiffs seek actual damages for the 27 uses of that image at one website and the one use at another

website.  Attached as Ex. "A" is a Stock Photography Quote showing regular Hawaiian Art Network pricing for the images for the specific uses made by Aloha Plastic Surgery, LLC.  Hawaiian Art Network's prices are based upon standard industry pricing (Carner Decl. at ¶ 3).

The regular licensing rate for one use of the thumbnail size image at the http://www.hair-transplant-hawaii.com website was multiplied times the number of infringing uses on the website, for an amount of actual damages for the infringing use of $8,154.00.  The regular Hawaiian Art Network price for that image used at the www.plastic-surgery-hawaii.com website was $703, for a subtotal of $8,857.00 plus $417.34 in GET for a **total in actual damages for the infringing use of the Pink Boat image of $9,274. 34**.

Two uses of the Hawaiian Sunset image at www.hawaiibiyouseikei.com websites would have been priced at $703.00 and $504.00, however, Plaintiffs elect to receive statutory damages for the willful infringement as to that image. (Carner Decl. at ¶ 4).  Plaintiffs acknowledges that Defendant would have received multiple-use discounts for several uses of an image at a single website, had Defendant properly licensed the image.  Because Defendant did not use the images legally, however, such discounts were not calculated in actual damages.

### B.     Statutory Damages for DMCA Violations

Additionally, pursuant to 17 U.S.C. § 1203(c), Plaintiff is entitled to an

award of damages of no less than $2,500.00 for each violation of 17 U.S.C. § 1202 and no more than $25,000.00 for each violation, See 17 U.S.C. § 1203(c)(3)(B).

Based upon the entry of default, Plaintiff's allegations of Defendants' removal of copyright management information and placing false copyright information on one of the images at Defendants' websites should be taken as true. See Warner Bros., 346 F. Supp. 2d at 1071. Although Plaintiff may seek up to $25,000 for each of the three violations of 17 U.S.C. § 1202, Plaintiff seeks **$5000 for each of the three DMCA violations for a total of $15,000**.

### C.   Recovery of Attorneys' Fees and Costs

Pursuant to 17 U.S.C. § 505, entitled "Remedies for infringement: Costs and attorney's fees," and 17 U.S.C. § 1203, entitled "Civil Remedies," the Court in its discretion may allow the recovery of full costs and reasonable attorneys' fees to the prevailing party.

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). See Fisher v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Hensley, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar

amount based on an evaluation of the factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9h Cir. 1975), which have not been subsumed in the lodestar calculation. See <u>Fisher</u>, 214 F.3d a 1119 (citation omitted).

The factors the Ninth Circuit articulated in <u>Kerr</u> are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr</u>, 526 F.2d at 70. Factors one through five have been included in the lodestar determination. See <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Once calculated, the "lodestar" is presumptively reasonable. See <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>see also</u> <u>Fisher</u>, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following lodestar amount for attorney's fees it incurred in this case as detailed in the attached Declaration of Counsel:

|  | Hours | Rate/Hour | Amount |
|---|---|---|---|
| J. STEPHEN STREET | 22.60 | $ 300.00 | $ 6,780.00 |

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees.  See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See id.; see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9h Cir. 1992), as amended on denial of reh'g, (1993)  (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  Although attorneys are required to provide evidence that the rate charged is reasonable, *See* Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys.

### V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its Motion for Default Judgment be granted and that Judgment be entered in the amount of $10,000 plus $9,274 for the copyright infringements, and $15,000 for the DMCA violations, for a total of **$34,274 in statutory and actual damages, plus attorneys' fees and costs in the total amount of $7,539.57.**

DATED:  Honolulu, Hawaii, March 24, 2012

*/s/ J. Stephen Street*
J. STEPHEN STREET
Attorney for Plaintiffs