J. STEPHEN STREET       1573-0
134 Maono Place
Honolulu, Hawaii 96821
Telephone No.:    (808) 754-1647
Facsimile No.:    (888) 334-6499
E-mail:     jsstreet@ip-law-hawaii.com

Attorney for Plaintiffs
HAWAIIAN ART NETWORK, LLC and
VINCENT K. TYLOR

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAIIAN ART NETWORK, LLC and VINCENT K. TYLOR,<br><br>                Plaintiffs,<br><br>    vs.<br><br>ALOHA PLASTIC SURGERY, LLC; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; and DOE ASSOCIATIONS 1-10,<br><br>                Defendants.<br><br>_____ | CIVIL NO. 11-00722 JMS/KSC (Copyright Infringement)<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO SET ASIDE DEFAULT AGAINST DEFENDANT ALOHA PLASTIC SURGERY, LLC. FILED DECEMBER 30, 2011; DECLARATION OF COUNSEL; EXHIBITS A-C; CERTIFICATE OF SERVICE<br><br><u>HEARING</u>:<br>Date:  May 14, 2012<br>Time:  9:30 a.m.<br>Judge: Hon. Kevin S. Chang |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO SET ASIDE DEFAULT AGAINST DEFENDANT ALOHA PLASTIC SURGERY, LLC. FILED DECEMBER 30, 2011

Plaintiffs HAWAIIAN ART NETWORK, LLC and VINCENT K. TYLOR (hereafter "Plaintiffs"), respectfully submit their memorandum of law in opposition to Defendant ALOHA PLASTIC SURGERY, LLC'S (hereafter "Defendant APS") Motion to Set Aside Default Judgment Against Defendant Aloha Plastic Surgery, LLC Filed December 30, 2011 (Doc. # 15).

Defendant APS fails to show good cause for the default to be set aside. Much of the argument supporting Plaintiffs' Motion for Default Judgment (Doc. # 12) also serves as a basis for denying Defendant APS's motion, and will not be repeated here. Defendant APS has not provided any factual basis for the court to conclude that its failure to retain counsel and answer the complaint was not intentional, or that there are any meritorious defenses to Plaintiff's claims. Nor can Defendant APS assure the court that Plaintiffs will not be prejudiced by further delay if Defendant APS carries through with its threats to simply bankrupt the LLC.

## I.    FACTUAL BACKGROUND

Defendant APS and Dr. Michael Pasquale (hereafter "Dr. Pasquale") have been aware of the claims in this action since the beginning

of September 2011.  Plaintiffs' counsel and Dr. Pasquale exchanged several lengthy emails between September 13 and September 16, 2011.  In emails on September 13, 14 and 15, Plaintiffs' counsel recommended that Dr. Pasquale consult with legal counsel, (Decl. of Counsel ¶ 8). On September 15, Plaintiffs' counsel requested that Dr. Pasquale no longer communicate directly with Plaintiffs' counsel, but have his attorney contact Plaintiffs' counsel.  A true and correct copy of the email exchange on September 15, 2011 is attached as Ex. A (Decl. of Counsel ¶ 9).

On Friday September 16, 2012 Dr. Pasquale advised Plaintiffs' counsel that he was leaving on a two month trip over the weekend and requested that Plaintiffs' counsel wait to file any action until after Dr. Pasquale's return on November 20, 2011.  A true and correct copy of the email is attached Ex. B.   Plaintiffs' counsel honored that request and filed this action on December 1, 2011.  Dr. Pasquale was served on December 3, 2011.  (Decl. of Counsel ¶ 4).

On December 5, 2011, Dr. Pasquale made six posts to a website dedicated to recipients of demand letters concerning copyright infringements, including the following:

Hello Everyone

I just got hit with a lawsuit from Tylor and HAN (Hawaiian Art Network).

***

As soon as I get a chance I will give more info and hopefully find a way to get everyone together to counter this.  I am looking for an attorney who will go after this and willing to pay for the depositions and get all HAN records to see if this is a scam etc now or legitimate.

***

(Decl. of Counsel ¶ 11).

On January 3, 2012, after 5 p.m. Plaintiffs' counsel received a telephone call from a man identifying himself as Michael Pasquale, who said he had received a copy of the Entry of Default and that he was requesting that Plaintiff  set it aside.  Plaintiffs' counsel requested that Dr. Pasquale have Aloha Plastic Surgery's counsel contact him to discuss the matter.  Dr. Pasquale indicated that he was contemplating filing counterclaims and had contacted various attorneys but that he hadn't found a suitable lawyer to do so.  He said that he wasn't sure whether he was going to hire a lawyer.  Plaintiff's counsel informed him that he could not represent the corporation in court unless he was licensed to practice law (Decl. of Counsel ¶ 7).

Nevertheless, on Friday, January 6, 2012, Dr. Pasquale filed what he characterized as "Defendants request to court for:  Set Aside Default Judgment request by Plaintiff" (Doc. # 8) on behalf of Aloha Plastic Surgery LLC.  On Monday January 9, 2012, Plaintiffs filed a motion to strike based upon Local Rule 83.1 (Doc. No. 9). The Court granted that motion by order

dated January 10, 2010 (Doc. # 10).  The "motion" filed by Dr. Pasquale also fell far short of providing any substantive basis to set aside the default.

On February 9, 2012, Dr. Pasquale emailed counsel for Plaintiffs suggesting why he had not bothered to retain counsel to defend this action:

> Basically Aloha Plastic Surgery has no real assets.  So I am thinking you may want to take the LLC as payment.  I may form another cooperation (sic) with my wifes (sic) money probably less expensive than to hire a lawyer in which case you may be welcome to what ever (sic) is left and sell it from the LLC.
>
> As far as me, I have about 2000 in a checking account.  Everything else is in my wife's trust and she owns it.  She has nothing to do with this so up to you.

A true and correct copy of the February 9, 2012 email received by Plaintiffs' counsel from Dr. Pasquale is attached as Ex. C (Decl. of Counsel ¶ 12).  Dr. Pasquale went on to request another settlement offer so he could "make a decision what to do about this."  Plaintiffs made a settlement offer to resolve the matter on the same day and did not receive any response (Decl. of Counsel ¶13).

On February 14, 2012, Plaintiffs' counsel received a telephone call from attorney Robin Melchor, indicating that she would be representing Aloha Plastic Surgery in this matter and requesting additional time to evaluate the claim before Plaintiffs filed a motion for default judgment.  On

February 22, 2012, Plaintiffs' counsel called Robin Melchor, who said that she had not yet had a chance to evaluate the claim.  Plaintiff's counsel requested that she respond by Friday, February 24, 2012.  Plaintiffs' counsel had no further communication from Robin Melchor, until she made an appearance at the Rule 16 conference on March 23, 2012.  (Decl. of Counsel ¶ 14).

## II.   ARGUMENT

Under *FRCP 55(c)*, the court has broad discretion in deciding whether to set aside a default: "[t]he court may set aside an entry of default for good cause shown [,]" See *Brady v. United States, 211 F.3d 499, 504 (9th Cir. 2000)*. The Ninth Circuit has identified three factors that the court should consider in determining whether good cause exists to set aside an entry of default: "(1) whether [the defendant] engaged in culpable conduct that led to the default; (2) whether [the defendant] had a meritorious defense; and (3) whether reopening the default judgment would prejudice [the plaintiffs]." *Franchise Holding II, LLC v. Huntington Restaurant Groups, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004)* (citing *TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001))*.

The party seeking to set aside default bears the burden of establishing that these factors favor setting aside the default. *Franchise*

*Holding II, LLC*, 375 F.3d at 926.  The court may deny a motion to set aside an entry of default if the moving party fails to show that any one of the three factors has not been satisfied: "This tripartite test is disjunctive," *Cassidy v. Tenorio, 856 F.2d 1412, 1415 (9th Cir. 1988)*; *Fruean v. Bank of New York Mellon, et al., 2011 U.S. Dist. LEXIS 80527, (USDC Hi, July 22, 2011)*.

### A.   <u>Culpable Conduct</u>

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Group, 244 F.3d at 697* (emphasis in original) (quoting *Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988))*. The Ninth Circuit has limited the kind of intentional conduct that may be considered culpable under *FRCP 55(c)* determinations: "in this context, the term 'intentionally' means that a [defendant] cannot be treated as culpable simply for having made a conscious choice not to answer; rather to treat a failure to answer as culpable, the [defendant] must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere  [*8] with judicial decision-making, or otherwise manipulate the legal process.'" *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1092 (9th Cir. 2010)* (citing *TCI Group, 244 F.3d at 697*).

There is no issue as to service of process or as to whether Defendant APS had actual notice of the Complaint and Summons in this case.  There is no legitimate issue that Defendant APS chose not to  retain counsel until more than a month and a half after its answer was due.  Dr. Pasquale's stated misunderstanding of the summons does not explain why he waited another month and a half after learning that he was not entitled to practice law without a license to retain counsel.  Nor does it explain why counsel waited six weeks more to move to set aside the default after being retained.

In *Mesle, 615 F.3d at 1093*, the Ninth Circuit held that the district court erred where it found the defendant's conduct to be culpable because he had actual or constructive notice of the filing of the action and failed to answer, without the district court analyzing whether that failure was intentional. Here, an analysis of Defendant APS's actions show that Dr. Pasquale has acted with an intention of interfering with judicial decision-making, and otherwise manipulate the legal process, with the apparent ill-advised purpose of driving up the cost of the litigation for the opposing party, while threatening to bankrupt his plastic surgery LLC. His January 9, 2012 email quoted above leads to no other plausible conclusion.

## B.  <u>Meritorious Defenses</u>

Even if Defendant APS can persuade the court that it did not "intentionally" fail to retain counsel and answer the Complaint due to bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process" (*TCI Group, 244 F.3d at 697)*, it still falls far short of demonstrating any meritorious defenses that would justify moving forward with this case on the merits.

The Ninth Circuit has held that in order to demonstrate the existence of a meritorious defense, the moving party must show more than mere conclusory allegations, and "must present specific facts that would constitute a defense," if the litigation is permitted to proceed against the moving defendant. *TCI Group, 244 F.3d at 700* (quoting *Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969))*. "A mere denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding, 375 F.3d at 926* (quoting *Madsen, 419 F.2d at 6*) (internal citations omitted).  Although the burden on the party moving to vacate a default judgment "is not extraordinarily heavy" *TCI Group, 244 F.3d at 700*, Defendant APS has failed to assert <u>any facts</u> to sustain the absurd litany of defenses that Defendant APS asserts at page 6 of its Memorandum in

Support of Motion (Doc. # 15-1).  Defendant APS does not explain how any of the facts it does recite would constitute a defense to the copyright infringement claims, nor is any defense raised to the Digital Millennium Copyright Act, 17 U.S.C §1202(a) claim (false copyright management information).  The Court can spare Defendant APS's counsel the inherent problems under Rule 11 FRCP of attempting to assert these defenses, without any factual basis, by simply denying the motion to set aside the default.

### C.    <u>Prejudice to Plaintiffs</u>

In order to determine whether setting aside default would be prejudicial to a plaintiff, a court must look at whether the plaintiff's ability to pursue his claim will be hindered. *TCI Group, 244 F.3d at 701.* "To be prejudicial, the setting aside of a judgment must result in greater harm that simply delaying resolution of the case." *Id.* Rather, the hindrance must be a tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion. *Id.*

Here relief from the entry of default would not prejudice Plaintiffs' ability to prove its case on the merits because Plaintiffs' claims are not time sensitive; "[t]he mere fact that the nondefaulting party will be required to prove his case without the inhibiting effect of the default upon the defaulting

party does not constitute prejudice which should prevent a reopening."

*BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 549 P.2d 1147, 1150 (Haw. 1976)).*

It will, of course, increase the cost of the litigation.  Provided that Defendant

APS is prepared to pay the additional award of attorneys fees necessitated by

its pursuit of spurious defenses, there may be no prejudice to Plaintiffs from

the added costs.  However, if Dr. Pasquale uses the opportunity of further

delay to set up his plastic surgery practice under a new entity in his wife's

name, as he suggested was his intent, prejudice to Plaintiffs is clear.

## III.    CONCLUSION

For the foregoing reasons Plaintiffs respectfully request that

Defendant APS's Motion to Set Aside Default Against Aloha Plastic

Surgery, LLC, Filed December 30, 2011, be denied.


DATED:  Honolulu, Hawaii, April 23, 2012

*/s/ J. Stephen Street*  _____
J. STEPHEN STREET
Attorney for Plaintiffs